## MANGLESDORF SEED CO. v. BUSBY et al.

No. 16712—Opinion Filed June 22, 1926.

**1. Sales—Warranty of Seed—Effect of Pure Seed Law.**

Chapter 138, S. L. 1919, known as the Pure Seed Law, is a regulatory and penal statute designed primarily to protect the citizens of this state from the propagation and spread of noxious weeds and plants through their intermixture with agricultural and garden seed, and none of its provisions were intended to, or do, create any new rule of civil liability for breach of express or implied warranty in the sale of personalty.

**2. Same—Proof of Breach of Warranty.**

Under sections 11 and 12 of the act, provisions are made for a new method and quantum of proof, cumulative of the common-law rule, in establishing breach of warranty in the sale of seeds, but where such provisions are not availed of to establish such breach, the ordinary and long recognized rules for establishing such liability apply.

**3. Same—Breach of Implied Warranty.**

In an action ex contractu for breach of implied warranty in the sale of seeds, that portion of section 8 of the act making illegal the sale of seeds bearing a false label has no application, because scienter must be alleged and proved under that section.

**4. Same—Liability for Sale of Cane Seed for Broom Corn Seed—Erroneous Instructions and Exclusion of Evidence.**

In an action ex contractu for breach of implied warranty in the sale of seeds, it is prejudicial and reversible error for the trial court to exclude evidence offered by defendant of an express nonwarranty, the seeds being labeled in strict conformity to the Pure Seed Law, and it is also reversible error to instruct the jury in the language of section 12 of the act, when the seeds have not been found to be "faulty or defective" by test and analysis under section 11. For an innocent mistake in the sale of cane seed for broom corn seed, the rule of liability and the method of proof is the same as for the breach of implied warranty of fitness in the sale of any other personalty.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Grady County; M. W. Pugh, Judge.

Action by E. Busby and others against Manglesdorf Seed Company and Dorchester Brothers, a partnership, to recover damages.

From a judgment in favor of plaintiffs, the defendant Manglesdorf Seed Company brings error. Reversed, with directions.

This action was commenced in the district court of Grady county by plaintiffs filing therein their petition, wherein it was alleged in substance that during the year 1923 plaintiff E. Busby was engaged in farming certain lands belonging to the other plaintiffs, who were to receive as rentals one-half of the broom corn crop grown thereon; that in March, 1923, he purchased from the defendants certain broom corn seed for planting purposes which were represented to him as being black Spanish broom corn seed; that said seed were planted at the proper season and properly cultivated and tended, but instead of producing a broom corn crop they produced a very inferior quality of cane which was of the market value of not exceeding $50; that if the seed purchased by plaintiff had been black Spanish broom corn seed as represented, the same would have produced at least three tons of broom corn of the reasonable market value of $600, and that the cost of harvesting same would not have exceeded $135; that by reason of the failure of the implied warranty of said seed by defendants, plaintiffs have suffered damage to the amount of the difference in value of the cane crop purchased and the broom corn crop, which would have been produced if the seed had been black Spanish broom corn seed, in the sum of $423.50, for which plaintiffs pray judgment.

Manglesdorf Seed Company filed its separate answer consisting of a general denial and certain affirmative defenses in substance as follows: It first pleaded specially to the jurisdiction of the court, and alleged that plaintiffs were not the real parties in interest, and were without legal capacity to sue; it next alleged that it sold the seed in question to Dorchester Brothers by virtue of their written order; that said order was received and filled at Atchison, Kan., and delivery was made at Atchison, Kan., to a common carrier for transportation to Dorchester Brothers; that on the invoice covering said shipment there was printed the following nonwarranty clause:

"All seeds are selected with the greatest of care, but we give no warranty, expressed or implied, nor will we be responsible for the crop. No claim will be considered unless made immediately upon receipt of goods."

That Dorchester Brothers received and accepted said shipment of seed and paid for same with full knowledge of the nonwarranty clause above quoted; that the sale of said seed to Dorchester Brothers was made in the regular course of trade, and

without knowledge on the part of this answering defendant that plaintiffs were interested in any way as purchasers from Dorchester Brothers.

Dorchester Brothers answered by general denial, and by the affirmative defense that in the purchase of said seed they acted as agents of the plaintiffs, and that by reason of such agency they are not liable to plaintiffs. Manglesdorf Seed Company filed a reply to the separate answer of Dorchester Brothers, consisting of a general denial, and further denying specifically the fact of agency as alleged in the answer of Dorchester Brothers.

The case was tried upon the issues thus framed to the court and jury, and resulted in a verdict exonerating Dorchester Brothers from any liability in the sale of said seed, and in favor of plaintiffs against Manglesdorf Seed Company for the sum of $300. After unsuccessful motion for new trial, defendant, Manglesdorf Seed Company, has brought the case here by petition in error with case-made attached for review.

Burford, Miley, Hoffman & Burford, and Barefoot & Carmicheal, for plaintiff in error.

Bond, Melton & Melton, for defendants in error.

Opinion by LOGSDON, C. Defendant's first proposition under its numerous assignments of error presents alleged error of the trial court in the exclusion of certain evidence offered by defendant, and in giving in charge to the jury paragraph No. 4 of the instructions.

Defendant Sam Dorchester was a witness for plaintiffs and upon cross-examination identified the invoice covering the particular shipment of seeds here involved. This invoice was then offered in evidence by defendant seed company, when the following occurred:

"Mr. Melton: If the court please, the plaintiff has no objections to the invoice, except that plaintiff objects to the printed part on the bottom of the invoice, which printed part seeks to limit the liability of the Manglesdorf Seed Company, for inferior or defective seed it may sell plaintiff in contravention of law. Court: It may be admitted with the exception of that part. Mr. Burford: The whole instrument beter go in and receive it for what it is worth. It should go in for what it is worth. Court: It may be admitted with the exception of the printed part at the bottom."

That portion of the invoice excluded by the court reads:

"All seeds are selected with the greatest care, but we give no warranty, either expressed or implied, nor will we be responsible for the crop. No claims will be considered unless made immediately upon receipt of goods."

In plaintiffs' petition they alleged a breach of implied warranty in the sale of said seeds thus:

"* * * and by reason of the failure of the implied warranty by the defendants in the sale of said seed these plaintiffs have been damaged in the said sum of $423.50."

Plaintiffs again alleged in the fifth paragraph of their petition:

"Plaintiff herein further alleges and shows to the court that the said seed so sold this plaintiff herein were sold as agricultural seed within the meanings of the laws of the state of Oklahoma, and by the making of said sale the sellers thereof warranted said seed to be black Spanish broom corn seed."

Under these express allegations of implied warranty it seems clearly evident that the trial court erred as a matter of law in excluding the offered evidence of express nonwarranty, unless, as contended by plaintiffs, the express nonwarranty clause violates some express statute of this state. It is sought to sustain this action of the trial court and its instruction No. 4 to the jury, by reason of the language of Comp. Stat. 1921, sec. 3793. This section was enacted as section 12 of chapter 138 of the Session Laws of 1919, known as the Pure Seed Law. The title of that act reads:

"An act regulating the sale of agricultural, garden and truck seed; defining agricultural seed; providing for label requirements, standard of purity; defining noxious weeds, enforcing officer; inspecting, sampling and testing seed; violations defined, other violations defined; provisions for free tests and the law providing for the expense of this act; making a violation of any of the provisions of this act a misdemeanor, and prescribing a penalty."

This language clearly shows that the act was intended to be regulatory and penal, and that it did not purport to establish any new rule of civil liability for the breach of express or implied warranties in the sale of seeds. None of the provisions of the act are more comprehensive than the title. The first section names the agricultural seeds which are to be included within its provisions, "which are sold, offered or exposed for sale within this state for seeding purposes within this state." Section 2 requires a label written or printed in English, and states what the label shall show. Section 3 contains similar require-

ments and directions as to mixed seeds for agricultural planting, while section 4 extends these provisions to garden and truck seeds. Enforcement of these regulatory provisions is entrusted to the Board of Agriculture by sections 6 and 7, and the duties of the board and its officers are therein defined. Section 8 defines an illegal sale of seeds thus:

"It shall be unlawful for any person, firm or corporation to sell, offer, or expose for sale within this state, any agricultural seed or agricultural seeds, mixtures of agricultural seed or seeds, garden or truck seeds, as defined in this act, for seeding purposes within this state without complying with the requirements of this. act, or to falsely mark or label any agricultural seed or seeds, garden or truck seeds, or to interfere in any way with the inspectors or assistants in the discharge of the duties herein named."

Section 9 fixes the penalty for illegal sales and provides the procedure for prosecution and recovery thereof. Section 10 authorizes the seizure of unlabeled seeds, while section 11 grants a privilege to any citizen of the state to have seed samples analyzed and tested under rules of the board. Section 12 has no relation to the regulatory and penal provisions of the act, but is a complement to section 11, and provides a remedy for the citizen whose seed test and analysis shows the seeds, legally sold to him under the regulatory provisions, to be in fact "faulty or defective." Section 12 reads:

"All persons selling seed for agricultural planting purposes which are faulty or defective, shall be liable in damages in such sum as the purchaser may sustain."

This language announces no new rule of civil liability for breach of implied warranties in the sale of personalty. Such has always been the law in this jurisdiction. Coyle & Smith v. Baum, 3 Okla. 695, 41 Pac. 389. Rather, a consideration of sections 11 and 12 of the act. in their relation to each other and in their relation to its other provisions, leads to the conclusion that it was the legislative intent in their complementary provisions to establish a new method and quantum of proof, cumulative of the common-law rule, for establishing breach of warranty in the sale of seeds. The method of proof is by test and analysis, while the quantum of proof is that shown by the result of the test and analysis. This application of these two sections is clearly illustrated in the recent case of Geren v. Courts Trading Co., 99 Okla. 170. 226 Pac. 369. There the purchaser of cotton seed had same tested and analyzed under the

provisions of section 11, and introduced the result of the test as evidence, this result showing that less than 50 per cent. of the seeds were fertile and capable of germination. This court held that such evidence authorized an instruction in the language of section 12 (Comp. Stat. 1921, sec. 3793). There is no language anywhere in the act which, by the most liberal interpretation, may be construed to change the pre-existing law, as to express and implied warranties in the sale of personalty. Clearly, if it had been intended in the instant action to base the claim for damages on deceit in the sale of the seeds as having been falsely marked or labeled under section 8, supra, it would have been necessary to allege scienter, because an innocent mistake is not mala prohibitum. No such allegation is contained in plaintiffs' petition. The action is not in tort, but ex contractu for alleged breach of an implied warranty.

In the instant case the seeds were labeled in conformity with section 2 of the 1919 Act. The label showed the seeds to be black Spanish broom corn; showed their approximate germination to be 89 per cent.; gave the date they were tested; showed they were grown in Kansas, and showed that they contained no noxious weed seed; it also showed the name of the vendor. It is clear, therefore, that whether the sale was made in Kansas, as contended by defendant seed company, or in Oklahoma, as contended by plaintiffs, there was no violation of the regulatory or penal provisions of the Act of 1919, unless the seeds were willfully given a false label, and plaintiffs did not so allege.

In order for plaintiffs to recover by virtue of the provisions of section 12, one of two things was necessary to be pleaded and shown in evidence: (a) That a test of the seeds under section 11 showed them to be faulty or defective; (b) that under an express or implied warranty of quality defendant had been guilty of a breach to plaintiffs' damage. The first of these prerequisites to a right of recovery was not attempted to be pleaded or proven. The second prerequisite was met by expressly pleading an implied warranty in the sale, and by ample proof that the seeds delivered produced a cane crop instead of a broom corn crop. In such a situation defendant seed company had a clear right to meet this issue of implied warranty and its breach, pleaded by plaintiffs and sustained by their proof, by the proof tendered of an express nonwarranty communicated to plaintiffs through Dorchester Brothers prior to the delivery of the seeds at Tabler.

118—9

Okla. The weight and value of this evidence .was for the jury, but it was competent.

It is concluded that the trial court erred as a matter of law in holding that the sale of the seeds here involved was in violation of an express statute, importing an absolute warranty, and in excluding the evidence offered by defendant seed company upon the issue of implied warranty. Since there was no allegation or proof that the seeds were "faulty or defective" within the meaning of any of the provisions of chapter 138, S. L. 1919, but ample proof that the seeds were not the kind ordered, there was nothing upon which to base instruction No. 4. and the giving of such instruction was error.

It is disclosed by the record that five or more different farmers ordered portions of the 700-pound shipment of broom corn seed, and that the seeds were parceled out by Dorchester Brothers to these various purchasers as they were called for. It is not shown how they were handled and kept by Dorchester Brothers while in their possession, nor that Dorchester Brothers had no cane seed on hand which might have been mistakenly given to plaintiff as his portion of the broom corn seed. None of the other purchasers of these seeds was produced as a witness to show that he had obtained like results as plaintiff, Busby, from his planting. The entire absence of evidence exploring these obvious avenues of inquiry leaves it uncertain whether the evident mistake made in the kind of seed delivered to Busby occurred in the warehouse of Manglesdorf Seed Company or in the store house of Dorchester Brothers. This demonstrates the prejudicial character of the two errors herein discussed, the effect of which was to withdraw from the consideration of the jury the question of breach of implied warranty, and to leave for its determination the sole question of the amount of damages sustained.

Other propositions are presented and discussed in the briefs, but these are not likely to arise upon another trial conducted in conformity to the views herein expressed, and their determination will be pretermitted.

Because of prejudicial error in excluding defendant's evidence on the issue of breach of implied warranty. and for prejudicial error in the giving of instruction No. 4, the judgment of the trial court is reversed, with directions to grant plaintiff in error a new trial.

By the Court: It is so ordered